UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APRIL LEWIS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOUNTAIN VIEW HOSPITAL, LLC, d/b/a MOUNTAIN VIEW HOSPITAL,<br><br>Defendant. | Case No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant Mountain View Hospital, LLC d/b/a Mountain View Hospital ("Mountain View") files this Notice of Removal of Plaintiff's civil action from the Circuit Court for the Twentieth Judicial Circuit, Davidson County, Tennessee, to this Court based on diversity of citizenship under 28 U.S.C. § 1332(d). In support of its Notice of Removal, Mountain View states as follows:

### PLEADINGS AND BACKGROUND

1. On January 11, 2024, Plaintiff April Lewis, individually and on behalf of all others similarly situated, filed a putative class action complaint (the "Complaint") against Mountain View in the Circuit Court for the Twentieth Judicial District in Davidson County, Tennessee (the "State Court Action").

2. On January 17, 2024, Plaintiff served Mountain View with copies of the Summons and Complaint.

3. Therefore, this Notice of Removal is timely because Mountain View filed this removal within 30 days of being served with the Complaint. *See* U.S.C. § 1446 (notice of removal

shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (time period for removal begins when the defendant is served).

4. Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of documents received in the State Court Action by Mountain View are attached to this Notice of Removal. Specifically, attached to this Notice of Removal are true and accurate copies of: (1) the operative Complaint (**Exhibit A**); (2) the docket in the State Court Action (**Exhibit B**); and (3) summons and proof of service (**Exhibit C**).

5. No other pleadings or substantive filings have been filed in the State Court Action.

6. Plaintiff brought the State Court Action against Mountain View following a criminal "cyberattack on MHV's systems," which Plaintiff alleges impacted the "names, contact information, demographic information, dates of birth, medical record numbers, patient account numbers, Social Security numbers, driver's license numbers, diagnosis and treatment information, prescription information, provider names, dates of service, facilities of service, and/or health insurance information" of approximately 441,903 "current and former patients" of Mountain View ("Data Incident"). *See* Compl., ¶ 1.

7. Plaintiff alleges that the Data Incident, which occurred between April 17, 2023 and May 29, 2023, was a result of Mountain View's failure to "implement industry standards for data security" and its failure to "properly train employees on cybersecurity protocols, resulting in the "Data [Incident]." *Id.* at ¶ 4.

8. Based on these allegations, Plaintiff asserts five causes of action against Mountain View for: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; and (5) invasion of privacy—intrusion upon seclusion. *See generally*, Compl.

9. Plaintiff purports to bring these claims on behalf of herself and a putative class (the "Class"), defined as "[a]ll individuals whose Private Information was compromised or disclosed in Defendant's Data [Incident] which occurred from April 17, 2023 to May 29, 2023, including those persons who received notice from MVH of the Data [Incident]." *See* Compl., ¶ 128.

10. Plaintiff alleges that the Class is comprised of approximately 441,903 individuals. *Id.* at ¶¶ 1, 41, 132(a).

## JURISDICTION AND VENUE

11. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

12. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred or more putative class members, in which the aggregate amount in controversy exceeds $5 million. Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

13. As laid out below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Mountain View may remove the State Court Action to this federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred members; (3) members of the putative class are citizens of a state different from that of Defendant; and (4) the aggregate matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14. Venue is proper in this Court because this Court is the judicial district and division embracing the place where the state court case was brought and is pending. The civil action was filed with the Circuit Court for the Twentieth Judicial Circuit in Davidson County, Tennessee, a

3

court within the Middle District of Tennessee. Thus, this Court is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a), 1446(a).

15. As set forth below, because all three CAFA requirements are satisfied here, removal of this action is appropriate.

**NO ADMISSION**

16. Mountain View denies any liability in this case, both as to Plaintiff's individual claims and as to the claims of the members of the putative Class. In alleging the amount in controversy and other matters in this removal pleading, Mountain View does not concede any liability, damages, or any other claims or defenses. Mountain View is only stating what the stakes of litigation could be under Plaintiff's allegations as set forth in her Complaint.

**THIS CIVIL ACTION IS PLED AS A CLASS ACTION**

17. As a threshold matter, this civil action qualifies as a putative class action because Plaintiff seeks to certify a class of approximately 441,903 individuals whose information was impacted in the Data Incident. *See* Compl., ¶ 128.

18. Plaintiff brings her civil action pursuant to Tenn. R. Civ. P. 23.01, which is identical to Federal Rule of Civil Procedure 23. *See Rogers v. Adventure House LLC*, 617 S.W.3d 542, 555 (Tenn. Ct. App. 2020) ("Our Supreme Court has previously determined that because of the identical language in our Rule 23 and in the Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." (internal quotation marks and citation omitted)).

**PLAINTIFF ASSERTS THIS CIVIL ACTION ON BEHALF OF MORE THAN 100 PUTATIVE CLASS MEMBERS**

19. Plaintiff brings this putative class action on behalf of approximately 441,903 individuals whose information was potentially impacted by the Data Incident. *See* Compl., ¶¶ 1, 41, 103(a).

20. To date, Mountain View has mailed notification of the Data Incident to approximately 445,096 individuals, the vast majority of whom reside in the United States.

21. Based on the above, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

## THERE IS MINIMAL DIVERSITY OF CITIZENSHIP

22. A district court shall have "original jurisdiction over" a "class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." *See Dean v. Draughons Junior Coll., Inc.*, No. 3:12-CV-0157, 2012 WL 2357492, at *3 (M.D. Tenn. June 20, 2012) (alteration in original) (quoting 28 U.S.C. § 1332(d)(2)).

23. <u>Plaintiff's and the Putative Class's Citizenship</u>. An individual's citizenship is determined by the place of the person's domicile. *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) ("Citizenship instead turns on 'domicile.'"). Domicile "requires that a person *both* be present in a state *and* have 'the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.'" *Id.* (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)).

24. Here, Plaintiff alleges that she is "a citizen of the State of Iowa where she intends to remain, residing in Rigby, Jefferson County, Idaho." *S*ee Compl., ¶ 7. Based on information and belief, Plaintiff maintains a mailing address in Idaho, and any reference to her residence or citizenship in "Iowa" was merely a typographical error.

25. Absent other evidence to the contrary, Plaintiff is a citizen of Idaho.

26. Plaintiff also seeks to represent a Class of approximately 441,903 current and former patients of Mountain View who received notice of the Data Incident. *See* Compl., ¶¶ 1, 128, 132(a). The Class Plaintiff seeks to represent is much broader and geographically expansive

than Plaintiff's citizenship. To date, Mountain View sent notifications of the Data Incident to approximately 445,096 individuals in all 50 states and the District of Columbia. While residency does not equate to citizenship, in this case, where only one putative class member must reside and intend to remain in a state diverse from Mountain View, and where Mountain View sent notifications to individuals in all 50 states and the District of Columbia, it is more likely than not that at least one of the approximately 441,903 putative class members is a citizen of a state diverse from Mountain View.

27. <u>Mountain View's Citizenship</u>. Mountain View is a limited liability company. Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Courts within the Sixth Circuit, including this Court, have concluded that that a limited liability company is an unincorporated association and citizenship is determined pursuant to § 1332(d)(1) in the class action context. *See e.g., Eagles Nest, LLC v. Moy Toy*, *LLC*, No. 2:14-00010, 2014 WL 4655277, at *5 (M.D. Tenn. Sept. 16, 2014) ("For qualifying class actions . . . CAFA abrogates the traditional rule that an unincorporated association" "of which a limited liability company is one" "shares the citizenship of each of its members for diversity purposes." (alteration in original) (internal quotation marks and citation omitted)); *Bozung v. Christianbook, LLC*, No. 1:22-CV-304, 2023 WL 2385004, at *3 (W.D. Mich. Mar. 6, 2023), *amended*, No. 1:22-CV-304, 2023 WL 4540341 (W.D. Mich. July 14, 2023) ("A limited liability company is a type of unincorporated entity. Accordingly, the citizenship provision in § 1332(d)(1) for unincorporated entities in class actions applies to LLCs."); *Ray v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, No. 7:18-CV-126-REW, 2019 WL 13212702, at *1 n.1 (E.D. Ky. Jan. 23, 2019) ("In the class action context,

an LLC is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." (internal quotation marks and citations omitted)).

28. Here, Plaintiff alleges that Mountain View is a "limited liability company organized and existing under the laws of the State of Delaware" and that Mountain View's principal place of business is in Tennessee. *See* Compl., ¶ 8. As such, Mountain View is a citizen of Tennessee and Delaware for purposes of diversity jurisdiction. Because Plaintiff is a citizen of Idaho, a state other than Tennessee or Delaware, and it is more likely than not that members of the putative class are citizens of a state other than Delaware and Tennessee, "minimal diversity" of citizenship is established here.

29. Accordingly, minimal diversity exists because Mountain View is, at a minimum, a citizen of Tennessee and Delaware, and it is more likely than not that members of the putative class are citizens of a state other than Tennessee or Delaware.

## The Amount in Controversy Exceeds the CAFA Threshold

30. Where, as here, a complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B); *see also Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007). It is well established that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *See e.g., Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Muszik v. Berkshire Hathaway Homestate Ins. Co.*, No. 3:19-CV-5, 2019 WL 13196995, at *2 (E.D. Tenn. Feb. 21, 2019).

31. The Sixth Circuit set out that "the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights [s]he seeks

7

to protect." *See Woodmen of the World/Omaha Woodmen Life Ins. Soc. V. Scarbro*, 129 F. App'x 194, 196 (6th Cir. 2005) (unpublished) (internal quotation marks and citation omitted). In determining the amount in controversy in a putative class action, such as here, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000. *See Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, No. 3:19-cv-138, 2019 WL 13292900, *3 (E.D. Tenn. June 12, 2019) (aggregating claims of class members to determine whether the amount in controversy exceeded $5,000,000).

32. Here, Plaintiff seek damages, including, but not limited to, "declaratory and other equitable relief"; "injunctive relief"; "actual and compensatory damages, and punitive damages, as allowed by law"; "restitution and damages"; "attorneys' fees and costs;" "enjoining Defendant;" and "such other or further relief as may be appropriate under the circumstances." *See* Compl., Prayer for Relief.

33. As demonstrated below, Plaintiff's allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

34. <u>Negligence and Negligence *Per Se* Claim.</u> Plaintiff brings claims for negligence and negligence *per se*. *See* Compl., ¶¶ 134–45 (negligence); *id.* at ¶¶ 146–47 (negligence *per se*).

35. Plaintiff alleges that Mountain View owed "to Plaintiff and Class Members a duty to exercise reasonable care in handling and using the Private Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data [Incident], theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access." *Id.* at ¶ 135. Plaintiff further alleges Mountain View owed a "duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to adequately safeguard their Private Information in accordance with state-of-

the-art industry standards concerning data security would result in the compromise of that Private Information—just like the Data [Incident] that ultimately came to pass," *Id.* at ¶ 136. Plaintiff further alleges that Mountain View "owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information." *Id.* at ¶ 137.

36. Plaintiff also alleges that Mountain View "violated its duty under Section 5 of the FTC Act, as well as HIPAA, by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards." *Id.* at ¶ 149.

37. Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages that she or the Class allegedly sustained as a result of Mountain View's purported negligence or negligence *per se*. But Plaintiff alleges that she and the Class have suffered, in part "fraudulent applications; fraudulent inquiries to credit reports; loss of the opportunity to control how Private Information is used; diminution in value of their Private Information"; "out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud"; and time spent to "mitigate the actual and future consequences of the Data" Incident. *Id.* at ¶¶ 142, 157. Plaintiff also seeks recovery for an "increased risk of fraud and identity theft," alleging that she now "faces a lifetime risk of identity theft." *Id.* at ¶¶ 119, 59. Further, Plaintiff alleges that her and putative class member's personal information is the type of information that criminals "often trade . . . on the 'cyber black-market' for years." *Id.* at ¶ 118–19. Based on these allegations, one option for assigning an amount in controversy to these damages is through the cost of credit monitoring.

38. Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $24.99 per person

per month. LifeLock offers a product, called Norton360 with LifeLock Advantage, which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $14.99 per month if paid annually.[1] Similarly, both Equifax[2] and Experian[3] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 (after the first month) and $24.99 per month, respectively. Multiplying just the cost of providing **one month** of credit-monitoring services at $14.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $6,624,125.97 (calculated as: 441,903 individuals notified, times 1 month, times $14.99 per month).

39. Accordingly, the amount in controversy for Plaintiff and the putative class members far exceeds the $5,000,000 CAFA amount-in-controversy jurisdictional amount.

40. <u>Breach of Implied Contract Claim</u>. Plaintiff also asserts that Mountain View breached implied contracts with Plaintiff and the Class. *See* Compl., ¶¶ 158–70.

41. Plaintiff claims that Mountain View "offered to provide medical services to Plaintiff and Class Members in exchange for their Private Information and in exchange for amounts paid for medical treatment and services that included payment for data security." *Id.* at ¶ 159. Plaintiff also alleges that Mountain View agreed that "it would maintain the privacy of protected health information and not disclose the Private Information it collects to unauthorized

---

[1] *See* https://lifelock.norton.com/offers?expid=SEM-NB-SSN-NF&om_sem_cid=hho_sem_sy:~en-us_lfl_llk_sch_gen_nau_nfr_adw_dtp_low:social_security~c_kw0000585888&promocode=GSEMNBSSNNF&cq_src=google_ads&cq_cmp=6449160135&cq_net=g&gad_source=1&gclid=EAIaIQobChMIltLYuvuLhAMVsKVaBR0uOA_6EAAYASAAEgI6uvD_BwE&gclsrc=aw.ds (last visited Feb. 11, 2024).
[2] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on Feb. 11, 2024).
[3] *See* https://www.experian.com/protection/creditlock/ (last visited Feb. 11, 2024).

persons without authorization, and that MVH would promptly notify them of any breach of their unsecured PHI." *Id.* at ¶ 160

42. Plaintiff claims that Mountain View breached its implied contract with Plaintiff and Class Members by, among other things, "failing to safeguard such information and failing to notify them promptly of the Data [Incident] that compromised such information." *Id.* at ¶ 163.

43. Plaintiff alleges that as a result of these breaches, she and the Class have "sustained damages." *Id.* at ¶ 170.

44. Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Mountain View's alleged breach of any implied contract. As such, Mountain View does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy. But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the putative Class would amount to, at a minimum, $6,624,125.97.

45. <u>Unjust Enrichment Claim</u>. Plaintiff brings an unjust enrichment claim, in the alternative to her breach of implied contract claim. Plaintiff alleges that "Plaintiff and Class Members conferred a benefit upon Defendant in the form of monies paid for treatment services and by providing their Private Information to Defendant." *See* Compl., ¶¶ 171–73.

46. Plaintiff also alleges that Mountain View "appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class." *Id.* at ¶ 174. As a result of this conduct, Plaintiff alleges that she "and Class members suffered actual damages in an amount equal to the difference in value between the purchases made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and the purchases

without unreasonable data privacy and security practices and procedures that they received." *Id.* at ¶ 175.

47. Plaintiff's Complaint contains no allegations that would support or suggest the "value" or amount of "reasonable data privacy security practices and procedures" that she allegedly paid for versus what she allegedly received. Therefore, Mountain View does not include in the calculation of the total amount in controversy Plaintiff's or the Class's alleged unjust enrichment damages. However, when Plaintiff's and the Class's alleged unjust-enrichment damages are combined with the estimated amount in controversy above, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

48. <u>Invasion of Privacy – Intrusion upon Seclusion Claim</u>. Plaintiff also alleges that "Plaintiff and the Class Members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties." *Id.* at ¶ 179. Plaintiff further alleges that Mountain View "owed a duty to Plaintiff and the Class Members to keep their Private Information confidential," and that Mountain View "failed to protect said PII and exposed the Private Information of Plaintiff and the Class Members to unauthorized persons in the Data [Incident]." *Id.* at ¶¶ 180–81. Based on this, Plaintiff alleges that Mountain View allowed "unauthorized third parties access to and examination of the Private Information of Plaintiff and the Class Members, by way of Defendant's failure to protect the PII." *Id.* at ¶ 182. Plaintiff further alleges that because this "intrusion was into a place or thing, which was private and is entitled to be private," and the "unauthorized release" of information was "highly offensive," Mountain View invaded Plaintiff's privacy. *Id.* at ¶¶ 183–84.

49. As a result, Plaintiff alleges that she and the putative Class have suffered or will suffer damages" as set forth above.

50. As with the other claims, Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Mountain View's alleged invasion of privacy. Therefore, Mountain View does not include any specific "invasion of privacy" damages in the calculation of the total amount in controversy. But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $6,624,125.97. Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

51. <u>Punitive Damages.</u> Plaintiff also seeks punitive damages. *See* Compl., ¶¶ 143, 191, Prayer for Relief. "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (internal quotation marks and citation omitted); s*ee also Logan v. Christ*, No. 111CV01033JDBEGB, 2011 WL 13228007, at *2 (W.D. Tenn. May 11, 2011). Courts have approved punitive damage ratios of 4:1, punitive to compensatory. *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–23 (1991) (4 times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"); *Kidis v. Reid*, 976 F.3d 708, 715–16 (6th Cir. 2020) (reiterating that single digit ratios, up to 9:1 comport with due process). As such, the amount-in-controversy requirement is met by Plaintiff's requests for punitive damages.

52. <u>Prayer for Other Monetary and Injunctive Relief and Other Claims</u>. In addition to the damages discussed above, Plaintiff also seeks declaratory and injunctive relief "requiring Defendant to (i) properly notify affected victims of the Data [Incident] (ii) strengthen its data

security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members." *See* Compl., ¶ 192. The value of declaratory or injunctive relief is based upon the "value of the object of the litigation." *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010). Generally speaking, the amount in controversy requirement may be established by demonstrating the costs of complying with an injunction. *Id.*

53. Once again, no allegations in the Complaint allow Mountain View to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, Mountain View has not included that value in the calculation of the total amount in controversy. Nevertheless, after adding these additional alleged damages with the cost of just one month of credit monitoring for the entire putative Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

54. <u>Total Amount in Controversy</u>. As stated above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the putative Class exceeds the $5,000,000 CAFA threshold. Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, injunctive or declaratory relief, or punitive damages, which, as discussed below, add even more to the total amount in controversy.

## **NOTICE**

55. Mountain View is serving this written notice of the removal of this case on Plaintiff's counsel, and a notice of filing this Notice of Removal will be promptly filed with the Circuit Court for the Twentieth Judicial Circuit of Davidson County, Tennessee in accordance with 28 U.S.C. §1446(d).

## **CONCLUSION**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Mountain View hereby removes the State Court Action from the Circuit Court for the Twentieth Judicial Circuit of Davidson County, Tennessee to the United States District Court for the Middle District of Tennessee, Nashville Division.

Respectfully submitted this 15th day of February, 2024

/s/ Wells Trompeter
Wells Trompeter
**HOLLAND & KNIGHT LLP**
Nashville City Center, Suite 2700
511 Union Street
Nashville, TN 37219
Telephone: (614) 850-8759
wells.trompeter@hklaw.com

Casie D. Collignon (*pro hac vice forthcoming*)
Keeley O. Cronin (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: (303) 861-0660
Facsimile: (303) 861-7805
ccollignon@bakerlaw.com
kcronin@bakerlaw.com

*Counsel for Defendant Mountain View Hospital, LLC d/b/a Mountain View Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2024, the foregoing Notice of Removal was electronically filed using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system . All counsel of record will also be notified via e-mail.

J.Gerard Stranch, IV (BPR 23045)
Andrew E. Mize (Pro Hac Vice forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks A venue, Suite 200
Nashville, Tennessee 37203
gstranch@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops (Pro Hac Vice forthcoming)
Mary Kate Dugan (Pro Hac Vice forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
ltoops@cohenandmalad.com
MDugan@cohenandrnalad.com

Samuel J. Strauss (Pro Hac Vice forthcoming)
Raina Borelli (Pro Hac Vice forthcoming)
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
sam@turkestrauss.com
raina@turkestrauss.com

*Counsel for Plaintiff and the Proposed Class*

                 */s/* Wells Trompeter

16

Case 3:24-cv-00175   Document 1   Filed 02/15/24   Page 16 of 16 PageID #: 16