**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| APRIL LEWIS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>MOUNTAIN VIEW HOSPITAL, LLC d/b/a MOUNTAIN VIEW HOSPITAL,<br><br>     Defendant. | Case No. 3:24-cv-00175<br><br>Class Action<br><br>Jury Demand |

## PLAINTIFF'S SUPPLEMENT MOTION IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL AND ATTORNEYS' FEES AND EXPENSES

Plaintiff April Lewis, by and through counsel, respectfully submits this supplemental motion for final approval of the proposed classwide Settlement, and for Plaintiff's attorneys' fees and expenses. At the hearing, the Court seems chiefly concerned with the claims rate and the amount requested in attorneys' fees and expenses—rather than on the reasonableness and adequacy of the proposed Settlement itself. Thus, this supplement focuses on Plaintiff's request for fees and expenses and further addresses the Court's concerns regarding the claims rate.

### I.        Introduction and Background

After a mediation on June 21, 2024, with the Honorable Diane Welsh (ret.), the parties continued to engage in negotiations guided by Judge Welsh and ultimately reached a resolution enshrined in the proposed Settlement. Dkt. 24-1 (hereinafter referred to as "SA") ¶¶ 4–6. The Court then granted preliminary approval to the Settlement on September 25, 2024, and ordered Epiq to administer the notice and claims process. Epiq received a total of 7,134 claims. Supplemental Declaration of Scott DiCarlo Regarding Settlement Administration (hereinafter "Suppl. Admin. Decl.") ¶ 5. After removing the invalid claims, the total number remaining was 6,875. *Id.* Thus,

the claims rate here was 1.7% based on the number of class members who received notice and 1.59% of the total class. *Id.*; Supplemental Declaration of J. Gerard Stranch, IV (hereinafter "Suppl. Stranch Decl.") ¶ 5.

Per the schedule determined at the preliminary approval stage, the Court held a final approval hearing on March 17, 2025. Given that the claims rate was under two percent even with a cash payment, the Court expressed concerns as to whether the Postcard Notice mailed to the Settlement Class Members sufficiently identified how Settlement Class Members could submit claims.. Moreover, the Court explained that it lacked sufficient information necessary to grant Plaintiff's request for fees and expenses, especially as it pertained to the $726,000 in attorneys' fees from the claims-made process.

As such, pursuant to the Court's oral ruling at the Final Approval Hearing, the Parties confirmed that the Postcard Notice mailed to the Settlement Class Members appropriately identified how Settlement Class Members could submit claims, as set forth in Exhibit A to the Supplemental Declaration of Scott DiCarlo Regarding Settlement Administration.

## II.    Value of the Settlement

The Settlement provides for both a common fund and a claims-made process. First, the $2,200,000 common fund will pay for cash payments to class members, Plaintiff's Incentive Award of $2,000, the costs incurred by Epiq for notice and claims administration, and for the first payment of attorneys' fees. SA ¶ 16. Second, the Settlement made another $2,200,000 in benefits available to class members to pay for all valid claims for documented out-of-pocket expenses and losses associated with the Data Incident, as well as the additional Medical Monitoring from CyEx. SA ¶ 49. In addition to the $2,200,000 claim-made fund, Defendant agreed to pay another $726,000 in attorneys' fees for counsel's work in securing this additional benefit for the class. *Id.*

¶ 52. Importantly, Defendant agreed to pay these fees separately from the benefits made available to the class such that these fees in no way impact the benefits class members will receive. *Id.*

Thus, in addition to the $2,200,000 common fund, the value made available in the claims-made process was $2,926,000 because separately paid attorneys' fees add value to a class action settlement—for a total value with the common fund of $5,126,000. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *9 (S.D. Ohio April 30, 2018) (including all such fees and costs in the total benefit to the class); *Dick v. Sprint Comms. Co., L.P.*, 297 F.R.D. 283, 299–300 (W.D. Ky. 2014) (noting the same because such costs and fees "do not diminish class recovery). Moreover, when calculating the reasonableness of a fee award, the Court can include the value of the benefits that Class Counsel's efforts have made available, regardless of whether Class Members ultimately exercise the rights created under the Agreement, especially because the ultimate claims rate has no bearing on the work required by counsel or the risks taken by counsel. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 285–85 (6th Cir. 2016) (noting the value of the work by class counsel to provide a fund from which Class Members could claim their benefits, work that is not undone by individual decisions to not file claims forms). Thus, Plaintiff's fee request is 28.33% of the value made available, as provided for in *Gascho*.[1]

If the Court were to deviate from *Gascho* and only look to the value of the claims actually made, then the total value is $3,556,624.61. For example, and as discussed during the March 17, 2025 hearing, the initial claims for out-of-pocket expenses exceed $430,000. But Epiq deemed many of those claims invalid and approved only six claims for out-of-pocket expenses for a total cost to Defendant of $943.81. Suppl. Admin. Decl. ¶ 6(c). Moreover, Epiq received 4,052 claims for CyEx Medical Monitoring. *Id.* ¶ 6(a). The cost to Defendant of that benefit was $8,104 given

---

[1] ($1,452,000/$5,126,000)*100 = 28.33.

the significant bulk discount that Defendant received, costing Defendant a mere $2.00 per class member. *Id.* Still, the cost for an individual to pay for that service would have been $155.40 per year for a total of cost of $629,680.80 in value that class members do not have to pay. *Id.* Thus, if the Court values the claims-made portion of the Settlement based on the claims actual made, then the total value of the common fund plus the claims-made fund, including the attorneys' fees in the claims-made fund is $3,556,624.61.[2] So, if the Court declines to value the settlement based on the benefit made available, then the fee request is 40.83%.[3]

### III. Lodestar

During the Final Approval Hearing on March 17, 2025, the Court requested Plaintiff's counsel's lodestar information.

Plaintiff's counsel have, as of the date of this filing, expended 321.4 hours on this matter, which equates to $345,660.30 in attorneys' fees. Suppl. Stranch Decl. ¶ 8. Counsel's rates vary based on their individual roles at firm—beyond just their respective titles. Rates for associates vary up to $925 per hour. *Id.* Partner rates range up to $1,450 per hour. *Id.* Mr. Stranch's rate, as the Managing Partner of Stranch, Jennings & Garvey, PLLC, is the highest—$1,450. Nevertheless, this is the rate that he charges his clients who pay by the hour. *Id.* ¶ 11. Moreover, Mr. Wells commands the highest rate among the associates, but this is because of his significant technical expertise that bears directly on data breach litigation and provides a perspective not otherwise present. *Id.* ¶ 13. Indeed, these rates are even more reasonable considering that they pale in comparison to the top litigators plaintiffs' counsel face. Top defense firms often charge at or above

---

[2] $2,200,000 common fund, plus $629,608.80 in the value of credit monitoring, plus $943.81 in documented expense reimbursement, plus the additional attorneys' fees of $726,000 = $3,556,624.61.

[3] ($1,420,000/$3,556,624.61)*100 = 40.83.

$2,000 per hour for their partners' time. *Id.* ¶ 12. By the end of the year, seventeen of the top defense firms are expected to command senior partner rates between $2,400 and $2,875 per hour. *Id.* Given the rates charged by the top defense firms, and given Mr. Stranch's top rate is the same that he charges to hourly clients, the rates incurred here are reasonable.

In addition to the $345,660.30 in fees incurred here, Plaintiff's counsel also incurred $8,980.40 in costs and expenses that were not reimbursed. *Id.* ¶ 9. These expenses were for mediation costs, filing fees, and service costs—and they do <u>not</u> include the extra costs for research, Pacer fees, etc. *Id.* These fees are included in the request for attorneys' fees. Thus, the total lodestar here is $354,640.70. Given the amount of attorneys' fees and unreimbursed expenses incurred to date, Plaintiff's requested lodestar multiplier is 4.09.

## IV. Plaintiff's Fee Request is Reasonable[4]

Whether based on the lodestar method or the percentage of the benefits made available, Plaintiff's request for $1,452,000 in fees and expenses is reasonable and supported by the case law.

***First***, courts should look to the benefits made available to the class rather than the benefits claimed because the work and risk incurred by counsel does not change based on the number of claims filed. As the Sixth Circuit explained in *Gascho v. Global Fitness, LLC*, the Supreme Court previously held that class counsel may share in the benefits made available for the class to claim "*whether or not they exercise [that right]*". 822 F.3d 269, 282 (6th Cir. 2016); *accord Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An

---

[4] The argument here provides a supplement to Plaintiff's initial motion for fees, which is incorporated herein.

allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").

Though the *Gascho* court seemingly recognized that fee determinations should ordinarily be made based on the benefits made available to the class rather than actually claimed, the Sixth Circuit nonetheless left the determination to the discretion of the district court. *Id.* at 286. Moreover, the court recognized that consumer class action "have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Id.* at 287.

In recognition of the value of these principles and the holding in *Gascho*, courts in the Sixth Circuit typically calculate fees based on the benefit made available. *Thompson v. Seagle Pizza, Inc.*, 2022 WL 1431084, at *11 (W.D. Ky. May 5, 2022) (noting that courts should consider the total benefit made available to the class and citing *Gascho* but noting that the court should not consider an illusory amount not actually available); *In re Automotive Parts Antitrust Litig.*, 2017 WL 3525415, at *4 (E.D. Mich. July 10, 2017) (declining to wait until the conclusion of the claims process to award fees because fees "need not be tied to amounts class members are actually paid" and noting that the fee award in *Gascho* was greater than the benefits claimed).

Here, the $2,200,000 claims-made fund was not illusory; many class members simply chose to forego their right to collect. The declination did not change the fact that counsel's efforts made that fund available. Given that the fee request also is being paid separately from the benefits made available, the fee request is a reasonable 28.33% of the benefits made available to the class.

**Second**, if the Court evaluates Plaintiff's fee request based on the lodestar, then a multiplier of 4.09 is reasonable given the complexity and risk associated with data breach litigation. Indeed,

as noted above, plaintiffs' attorneys must seek lodestar multiplier to afford the risk of paying the costs of litigation up front with the possibility of receiving less reimbursement, or none at all. Suppl. Stranch Decl. ¶ 14. In 2024, for example, Stranch, Jennings & Garvey received attorneys' fees on twenty-seven matters and received less attorneys' fees than were incurred in ten of those matters. This does not include matters that were investigated and ultimately not pursued. *Id.* ¶ 15. Given the risks associated with contingency fee arrangement for class counsel, courts often award significant lodestar multipliers. "[E]nhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Indeed, in *Arp v. Hohla & Wyss Enters., LLC*, the Southern District of Ohio approved a 5.29 multiplier. 2020 WL 6498956, *7 (S.D. Ohio Nov. 5, 2020) (citing *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (collecting cases and noting multipliers ranging from 4.3 to 8.5 were found reasonable); *see also In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding a multiplier of 6 given counsel's skill and the complexity of litigation). "Typically, courts use multipliers of 2 to 6 times the lodestar." *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013).

Here, the multiplier of 4.09 is reasonable given the risk, complexity, and expense of data breach litigation. Advocating on behalf of data breach victims is a risky proposition. Indeed, data breach class counsel may lose significant money on a case because the defendant produces an arbitration and class waiver agreement that the client signed but had not remembered when interviewed by counsel. Suppl. Stranch Decl. ¶ 16 Beyond the significant risk of losing money by taking these cases, counsel must be highly experienced and employ staff and attorneys with technical credentials to understand the background facts learned through discovery and pre-

litigation investigations. For these and other reasons, the complexity of data breach litigation has been recognized by courts around the country. *See, e.g.*, *In re Canon U.S.A. Data Breach Litig.*, 2024 WL 3650611, at *9 (E.D.N.Y. Aug. 5, 2024) (discussing the complexity and undeveloped nature of data breach litigation); *Krant v. UnitedLex Corp.*, 2024 WL 5187565, at *7 (D. Kan. Dec. 20, 2024) ("Data breach litigation is complex, risky and involves many unsettled areas of law."); *Rodriguez v. Prof. Fin. Co., Inc.*, 2024 WL 4494297, at *7 (D. Colo. Oct. 15, 2024); *Mikell v. Tycon Med. Sys., Inc.*, 2025 WL 720001, at *4 (E.D. Va. Mar. 6, 2025) (noting that data breach cases are "particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage").

Thus, given these factors, the multiplier of 4.09 is reasonable, especially considering that half the fees come from a common fund and the other half will be paid separately such that they do not diminish the benefits made available to the class.

## V. Conclusion

For the foregoing reasons, Plaintiff requests that the Court grant final approval to the proposed Class Settlement. Whether through the lodestar method or as a percent of the benefits made available, Plaintiff's fee request is reasonable.

Dated: May 9, 2025

Respectfully submitted,

J. Gerard Stranch, IV (BPR 23045)
Grayson Wells (BPR 039658)
Andrew E. Mize (Pro Hac Vice)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops
**COHEN & MALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

Samuel J. Strauss
Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
(872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on May 9, 2025, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel of record in the CM/ECF system.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
